IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| INEZ BALTAZAR HERNANDEZ, et al, | § | |
| | § | |
| v. | § | A-11-CV-856 LY |
| | § | |
| TEXAS DEP'T OF AGING & | § | |
| DISABILITY SERVS., et al. | § | |

**ORDER**

Before the Court is Non-Party Movant Governor Rick Perry's Motion for a Protective Order (Clerk's Doc. No. 1); Plaintiffs' Response to Motion (Clerk's Doc. No. 4); and Non-Party Movant's Reply (Clerk's Doc. No. 12). The District Court referred the above-motion to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following order.

**I.      GENERAL BACKGROUND**

In a case pending in the Southern District of Texas, Corpus Christi division, a group of plaintiffs are complaining that at the Corpus Christi State School—an institution run by the Texas Department of Aging & Disability Services (DADS)—employees staged fights between residents. The Plaintiffs, allegedly forced to compete in these fights, are suing DADS for violating their constitutional rights. *See Inez Baltazar Hernandez, et al. v. Texas Dept. of Aging and Disability Servcs., et al.*, No. 2:09-cv-163, in the U.S. District Court for the Southern District of Texas, Corpus Christi Division.

The Plaintiffs have served a notice on the Defendants seeking to depose Governor Rick Perry. Governor Perry filed an emergency motion to quash the deposition and requested a protective order. The District Court granted his motion to quash (Clerk's Doc. No. 2) and referred the motion for a protective order to the undersigned. Governor Perry asserts that as a high-ranking government official, he enjoys immunity from depositions absent exceptional circumstances. While the Plaintiffs concede that they must demonstrate exceptional circumstances before they may depose Governor Perry, they oppose his motion and claim that he possesses personal knowledge directly relevant to their case that cannot be obtained from other sources.

## II.   LEGAL STANDARD

Rule 26(c) of the Rules of Civil Procedure empowers a district court to issue an order to protect a party or witness from whom discovery is sought. FED. R. CIV. P. 26(c). "A party seeking a Rule 26(c) protective order prohibiting deposition testimony and document production must establish good cause and a specific need for protection." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003) (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

The party moving for a protective order carries the burden of establishing the need for the protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ferko*, 218 F.R.D. at 133 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). If the movant meets his burden, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c). In deciding whether to grant a

motion for a protective order, the court has significant discretion. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

Although courts have for 70 years frowned upon permitting the deposition of high-ranking officials, the cases tend to be fact-intensive, with the facts of each case varying substantially; therefore, no single case dictates whether these particular Plaintiffs should be able to depose Governor Perry. There are, however, several general principles that can be gleaned for the case law. For example, it is well-settled in the Fifth Circuit that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re Office of Inspector General*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) (citing *EEOC v. K-Mart*, 694 F.2d 1055, 1067–68 (6th Cir. 1982)). "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Id.* (quoting *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)).

The policies supporting this rule are several, but the primary goal is to avoid burdening an official with the time drain and distraction of depositions, particularly in light of how often suits are filed challenging governmental action. *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam). "[T]he Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *Id.* (citing *United States v. Morgan*, 313 U.S. 409 (1941)). For purposes of these rules, governors are high ranking officials. *See Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition."). When the deposition of a high ranking official has been permitted, it has almost always been because the official had personal knowledge of facts material to the suit, and there was no other alternative source for that information. *See, e.g.*, *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)

3

("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated. However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information.") (citations omitted).

## III. ANALYSIS

Governor Perry argues that the deposition subpoena should be quashed because he does not possess unique personal knowledge pertaining to the Plaintiffs' suit. He contends that there are not extraordinary circumstances to support requiring his deposition in this case, and that he does not possess knowledge of any information that cannot be obtained from other sources. The Plaintiffs do not disagree with any of the principles set out above, nor do they question that they have the burden of establishing extraordinary circumstances. They claim, however, that Governor Perry possesses personal information relevant to this case, and it is unobtainable from any other source. The evidence they point to in support of this claim is a series of letters addressed to Governor Perry from the U.S. Department of Justice, communicating the results of extensive investigations the DOJ had done into the conditions in Texas State Schools, including the Corpus Christi institution at issue in this case. The Plaintiffs contend that:

> The letters themselves are prima facie evidence that Governor Perry, as the party to whom the letters were directed, has personal knowledge. Governor Perry also has personal knowledge about his actions in response to the letters. In this discovery process, Plaintiffs seek to discover the truth about the substantial departures from professional standards at the Texas State Schools.

*See* Plaintiffs' Response at 13.

The Court does not find this argument persuasive. As the Fifth Circuit has noted, public officials "often send and receive correspondence relative to their actions," which "does not of itself subject them to the burdens of litigation discovery." *In re FDIC*, 58 F.3d 1055, 1061 (5th Cir. 1995).

4

The fact that the DOJ sent letters addressed to the State's chief executive officer does not demonstrate that the officer has knowledge of the matters addressed in those letters. Obviously, the governor delegates matters such as those addressed in the DOJ reports to his staff and to agency staff to handle. This case is no different, as Jonathan Hurst, the Director of the Budget, Planning and Policy Division, has attested in an affidavit attached to the motion for protective order. He explains that the ordinary chain of communication regarding matters such as those addressed in the DOJ correspondence is as follows:

> when policy matters arise at the agency that may require the attention of the Office of the Governor, it is the agency's responsibility to communicate these matters to that agency's policy advisor; from there, typically, the policy advisor reports the necessary information to the Director of Budget, Policy, and Planning, then the information is communicated to other relevant staff in the Office of the Governor. These communications do not occur by the agency directly contactingthc Governor, and rarely is the information initially communicated from the policy advisor to the Governor.

Aff. of Jonathan Hurst at 1 (Exh. B to Motion for Protective Order). Because of this system, Hurst states that "it would have been highly unusual, if not unheard of, for . . . communications to have occurred between the Governor himself and a staffer from the Department of Justice directly." *Id.* at 2. Instead, an agency adviser for DADS would likely have received and reviewed the letters. *Id.* Not only is it unlikely that Governor Perry communicated directly with the DOJ, but Hurst testifies that the governor also would not normally communicate directly with DADS, as that is typically handled by the DADS policy adviser in the Governor's office and a liaison from DADS. *Id.*

The Plaintiffs fail to refute Hurst's affidavit. Rather, they just reiterate that the DOJ addressed the letters to Governor Perry and state that to "discover the truth," they must "begin[] at the top and work[] down." Plaintiffs' Response at 13. This theory would effectively eliminate the

5

protection afforded to high-ranking officials "from discovery that will burden the performance of their duties" and from "unwarranted inquiries into their decision-making process." *Coleman v. Schwarzenegger*, No. S-90-0520, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008). The Plaintiffs' own response seems to indicate they cannot demonstrate extraordinary circumstances, as they only claim that the letters are "prima facie" evidence of knowledge. Even if the Court were to accept this claim, that prima facie case has been clearly rebutted with sworn testimony, and the Plaintiffs have failed to offer anything in response to this evidence. Further, the Plaintiffs wholly fail to show that they are unable to gather any information regarding how the State of Texas responded to the DOJ's correspondence from someone other than the governor. Indeed, Mr. Hurst's affidavit proves otherwise.

### IV.   CONCLUSION

For all of the reasons set forth above, the Court HEREBY GRANTS Non-Party Movant Governor Rick Perry's Motion for a Protective Order (Clerk's Doc. No. 1), and the Plaintiffs are prohibited from taking the deposition of Governor Rick Perry without further permission of this Court.

SIGNED this 16th day of December, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE